Filed 11/4/25; certified for publication 12/1/25  (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RACHEL ARROYO, Plaintiff and Appellant, v. PACIFIC RIDGE NEIGHBORHOOD HOMEOWNERS ASSOCIATION et al., Defendants and Respondents. | D084293 (Super. Ct. No. 37-2023-00050446-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Matthew C. Braner, Judge.  Reversed and remanded with directions.

Law Offices of Edward M. Teyssier and Edward M. Teyssier for Plaintiff and Appellant.

Murphy, Pearson, Bradley & Feeney and Suzie M. Tagliere, Tina L. Li, Hershini Gopal for Defendant and Respondent Pacific Ridge Neighborhood Homeowners Association.

Gordon Rees Sully Mansukhani and Christine Barker, Tremayne W. Wilson for Defendant and Respondent Jennifer Figgers.

Plaintiff and appellant Rachel Arroyo appeals from a judgment following a bench trial on her causes of action against defendants and respondents Pacific Ridge Neighborhood Homeowners Association (Association) and Jennifer Figgers.  In her operative pleading, Arroyo alleged claims for violations of Civil Code[1] section 5105 of the Davis-Stirling Common Interest Development Act (the Davis-Stirling Act or the Act; § 4000 et seq.) and Corporations Code sections 5513 and 5222, as well as negligence of Figgers, an elections inspector, relating to Association's handling of an election to recall Arroyo as an Association director.  Arroyo contends for various reasons the court erred in its statutory interpretation of section 5105, particularly the meaning of "association media," and its application to this case.  She further contends Figgers was negligent in failing to conduct the election "with fairness" to her.  Finally, Arroyo contends the recall vote failed because Association did not get the required 505 supermajority votes under Corporations Code section 5222, subdivision (b)(1).[2]

Both Association and Figgers respond that Arroyo is barred from claiming any violation of section 5105, as a prior superior court judge decided the same cause of action and issue against her in an earlier lawsuit.  Additionally, Figgers argues Arroyo was lawfully recalled; Association argues substantial evidence supports the court's finding there was a sufficient quorum and votes cast for the recall election.

---

[1]     Undesignated statutory references are to the Civil Code.

[2]     Arroyo additionally argues her appeal is not moot in part because the issues are likely to recur, her reputation must be vindicated, and the propriety of the court's ruling will determine whether she is entitled to attorney fees.  Neither respondent contends the issues are moot, however.

Construing section 5105 and the phrase "association media" independently, we conclude Association failed to provide Arroyo equal access to association media for purposes reasonably related to her recall election, and thus we reverse the judgment. Our decision, however, does not automatically void the election; that decision is left to the trial court in the first instance as indicated in our directions below.

FACTUAL AND PROCEDURAL BACKGROUND

We state uncontested background facts from the judgment and other facts in the light most favorable to Association and Figgers as the prevailing parties. We resolve in favor of the trial court's decision " 'any conflict in the evidence or reasonable inferences to be drawn from the facts.' " (*Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.)[3]

Association is a nonprofit mutual benefit corporation[4] incorporated in 1994 to manage the common interests of the Pacific Ridge subdivision. The subdivision consists of 607 homes in San Diego, California, and is governed by articles of incorporation, bylaws, and an amendment to a declaration of covenants, conditions and restrictions (CC&R's). Association's amended election rules, adopted in December 2019 (the election rules), govern the

---

[3] Arroyo's factual background states many facts without record citation. We disregard unsupported assertions. (Cal. Rules of Court, rule 8.204(a)(1)(C); see *County of Sacramento v. Rawat* (2021) 65 Cal.App.5th 858, 861.)

[4] In its respondent's brief, Association states it is a nonprofit *public* benefit corporation. Association's bylaws, however, state that it is a nonprofit *mutual* benefit corporation, and the trial court so found. The Corporations Code section applicable to the removal of directors in a nonprofit mutual benefit corporations is section 7222. It is identical in all respects to Corporations Code section 5222, relied upon by Arroyo for her arguments concerning the validity of the recall vote.

election and removal of Association's board members. Association is managed by five directors. In connection with board elections, Association provided a "request to serve" form to candidates. That form has blanks for candidates to fill in their name and address, and asks, among other things, "What experience do you have serving as a Board member or any similar relevant experience?" An Association election rule (rule B.1.) defines "Association Media" to mean its "newsletter, internet website, other written communication, and/or television channel(s) from [Association]" but provides it "does not include, within its definition, the official request to serve form provided by [Association], for Board election."

Arroyo is an Association member and subject to its governing documents, including the CC&R's and election rules. In 2021, Arroyo was elected to serve on Association's board of directors (the board). In March 2021, she and her husband sued Association for violations of statutes relating to its alleged failure to conduct fair elections and adopt fair election rules (*Arroyo, et al. v. Pacific Ridge Neighborhood HOA* (Super. Ct. San Diego County, 2023, No. 37-2021-0001113-CU-OR-CTL) (*Arroyo I*)). In part, she claimed Association violated section 5110 relating to the positioning of names on the ballot to promote incumbents and board-preferred candidates. She also claimed Association's request to serve form violated sections 5105 and 5135. The case proceeded during her tenure on the board. In May 2023, the court held a bench trial in that action, which concluded in early May 2023.

In July 2023, Judge Loren G. Freestone issued a final statement of decision. The court ruled in Association's favor on Arroyo's causes of action. As to whether the request to serve forms violated the law, the court ruled the request to serve forms "could arguably constitute campaign material on behalf of the candidate, not necessarily on behalf of the association" and that

4

they were not edited or redacted by Association but left to the candidate to prepare. It ruled there was no violation of section 5105, reasoning that even if those forms were considered some type of association media, they were distributed to the members for any candidate who wishes to prepare one, giving each candidate equal access. Judge Freestone found not credible "any evidence to the contrary . . . ."

A member circulated a petition to recall Arroyo from the board. In November 2023, Arroyo filed a petition and complaint for a peremptory writ of mandate, as well as injunctive and declaratory relief against Association and Figgers to require Association to conduct the recall election according to various statutes. Arroyo alleged she sought "equal access" to Association's media under section 5105, subdivision (a)(1). She further alleged she sought to force Association to comply with ballot printing requirements of Corporations Code sections 5222, subdivision (b)(1) and 5513, subdivision (c), requiring the corporation specify the percentage of votes required to approve the measure.

At some point, Association circulated a "director recall" document containing a "candidate form" (some capitalization omitted), asking members for a statement of their qualifications and description of why they would like to serve as a board member. The director recall document identifies the date and time of the recall election, and invites members interested in running for the recall position to submit the candidate form by a specified date. The document states that "[t]he candidate name and statement provided below will be included with the election materials provided to the membership." The director recall document listed the general duties of directors. It provided a space for a signature and date, under a statement: "YES, I am willing to run for the Board of Directors of Pacific Ridge Neighborhood

Homeowners Association." Arroyo submitted a statement to Figgers, with Arroyo's attorney advising Figgers that Arroyo was "not a candidate, but a sitting director who is subject to a recall election." Figgers asked counsel to confirm Arroyo was a candidate, in which case her statement would be printed with the ballot. Figgers explained that "[i]f [Arroyo] is not running her statement will NOT be mailed with the ballot as she is not a candidate and only candidate statements are included with the ballot mailing."

Ultimately, Figgers did not include Arroyo's name on the ballot. Association put out a notice of the virtual meeting and instructions, headed: "Pacific Ridge Neighborhood Homeowners Association Recall Direction/Elect New Director & Ballot Instructions."[5] (Underlining omitted.) Appended to the notice was the following statement, also headed by "Pacific Ridge Neighborhood Homeowners Association:" "The following members have returned their Board Member Applications to be named as candidates in the upcoming recall election. The names of the candidates have been listed in

_____

[5] In part, the notice states: "In accordance with California law and the Association's governing documents, the purpose of this meeting is to open, count and tabulate the votes on the following: Whether to recall Director Arroyo, and if the recall vote is successful, to elect a candidate to fill the remaining term (2 years) of the recalled director. [¶] Should the recall vote pass, the one (1) candidate receiving the highest number of votes shall be elected to fill the remaining term of two (2) years. [¶] Enclosed you will find a ballot to cast your vote(s) as to the following matters: [¶] Board of Director Rachel Arroyo [¶] Vote of whether to recall/remove Director Arroyo from the Board; and [¶] If the recall/remove vote is approved by the members, vote of whether to block the approval of the recall/remove vote related to Director Arroyo; and [¶] If the recall/remove vote is approved by the members, and not blocked, which candidate should replace Director Arroyo for the remaining two (2) year term." (Bolding and underlining omitted.) The notice goes on to explain how many votes are needed to conduct the recall election, and explains that the vote is subject to Corporations Code section 7222, subdivision (b).

alphabetical order by last name. The Candidates who have submitted their names to serve on the Board to replace a recalled/removed director or to replace an expiring director's term in the annual meeting are as follows:

"1) [name of candidate] [¶] I and my family have lived in the community for over 10 years. I would like to bring peace, collaboration, and time efficiency back to the Board. As a former Director for a large Sorrento Valley microchip firm, I am quite confident I have the skill set to accomplish the task."

In December 2023, Association held the recall election, hiring Figgers's company as the elections inspector. At the conclusion of that election, 375 ballots were opened and tallied. 369 members voted to recall Arroyo from the board, and six voted against recalling her (five voting no, and one abstaining). Six members voted to block the recall, and six members abstained from blocking the recall. At the same time, members elected as a replacement director the one member who had submitted a candidate statement and was identified on the ballot.

Following the election, Arroyo moved for declaratory and injunctive relief to void the election. Association, specially appearing, opposed the motion, in part arguing Arroyo's motion was procedurally improper, and she was reiterating arguments she had already made and lost at trial such that they were barred by res judicata.

In February 2024, Arroyo filed an amended petition and complaint seeking to overturn the recall election. She included three causes of action: (1) violation of the equal-access provision of section 5105, subdivision (a); (2)

7

negligence against Figgers and (3) violation of Corporations Code sections 5513, subdivision (c) and 5222, subdivision (b)(1).[6]

The court conducted a hearing on the matter in April 2024, treating it as a bench trial on Arroyo's first amended petition and complaint. It thereafter issued a judgment in Association and Figgers's favor. As to Arroyo's claim of a section 5105, subdivision (a)(1) violation, it ruled: "[T]he 'candidate form' utilized by defendants for the recall election is not 'association media' within the meaning of . . . section 5105, subdivision (a)(1). The court agrees with Judge Freestone's conclusion in *Arroyo I* that [Association's] election rule B.1 does not violate, and is consistent with, . . . section 5105. Rule B.1 defines 'association media' as '[Association's] newsletter, internet website, other written communication, and/or television channel(s) from [Association].' Rule B.1 also specifically excludes from the definition 'the official request to serve form provided by [Association], for Board election.'

"[Arroyo] argues the candidate form utilized by defendants in the recall is substantially different from the 'request to serve' form used in prior elections and therefore does not fall within the exclusion. The court disagrees; the obvious intent of the exclusion was to tether statements by candidates (introducing themselves to the voting membership) to the ballot materials, thereby distinguishing them from [Association's] communication network. Whether described as request to serve forms or candidate forms, they are akin to ballot materials, which are not 'association media.'

---

6    After Arroyo filed her post-election motion, the trial court deemed it to be Arroyo's first amended petition. But Arroyo then filed a new pleading that she denominated her first amended petition, and the trial court allowed that to be her operative pleading.

"Second, even were the court to accept [Arroyo's] argument and construe the candidate form as not falling within the exclusion, the court would still conclude the form is not 'association media,' as it does not fall within the categories specified in the first sentence of rule B.1. Of those categories, the only one that arguably captures the candidate form is 'other written communication,' but this category cannot be read in isolation. Read in context, this category refers to written communications similar to [Association's] newsletter and internet website (i.e., its ongoing [Association]-wide communication network).

"The court also rejects [Arroyo's] extraordinarily broad interpretation of the word 'media' in . . . section 5105, subdivision (a)(1), to include all forms of transmitting any kind of communication. The Legislature cannot have intended such a broad meaning of the word 'media,' as it would render the terms 'newsletters, or internet websites' meaningless surplusage. [Citations.]

"In sum, declining to distribute [Arroyo's] candidate form did not deny [Arroyo] equal access to association media because the candidate form is not association media. Accordingly, [Association] did not violate . . . section 5105, subdivision (a)."

The court further ruled in Association's favor on Arroyo's claim of violations of Corporations Code sections 5513, subdivision (c) and 5222, subdivision (b)(1). Finding that subdivisions (a) and (b) of section 5222 are "plainly meant to be read together," it ruled that because Association had more than 50 members, it was governed by Corporations Code section 5034, and thus to recall Arroyo Association needed a majority of members to vote for recall " 'at a duly held meeting at which a quorum is present.' " The court ruled Arroyo "cannot rely on the exception set forth in Corporations Code section 5222, subdivision (b)(1), to block the recall vote. That provision

9

states: [']In a corporation in which the articles or bylaws authorize members to cumulate their votes pursuant to subdivision (a) of Section 5616, no director may be removed (unless the entire board is removed) if the votes cast against removal, or not consenting in writing to the removal, would be sufficient to elect the director if voted cumulatively at an election at which the same total number of votes were cast (or, if the action is taken by written ballot, all memberships entitled to vote were voted) and the entire number of directors authorized at the time of the director's most recent election were then being elected.['] "

The court rejected Arroyo's argument that the clause "or not consenting in writing to the removal" referred to Association members who did not vote. It reasoned: "That clause must be read in context with the whole section, particularly the first part of the section prior to the clause [Arroyo] relies on. The only logical way to read that part of the section is that 'or not consenting in writing to the removal' refers to the 'votes' from members in the removal election. In other words, where cumulative voting is authorized by articles or bylaws, a director cannot be removed if, with respect to the recall election, the votes cast against removal or the votes not consenting in writing to the removal (i.e., participating members who abstained), would have been cumulatively sufficient to elect the removed director in a hypothetical election in which all director seats are open and all members voted (as action was by written ballot).

"Here, [Association] reached well beyond the 33 [percent] quorum required by Corporations Code sections 5222[, subdivision] (a)(2) and 5034, and its bylaws, because 375 votes were cast (61.78 [percent] of the 607 voting members). Of those 375 votes, only 6 were against recall (5 no, 1 abstain). Of the 375 votes on whether to block the recall, only 6 were in favor of blocking,

10

and 6 abstained. In a hypothetical election in which all five director seats are open and all 607 members vote, the candidates for each seat would need at least 304 votes to win any given seat. Thus, even with cumulative voting, [Arroyo] would have needed at least 61 members to vote against recall or abstain (majority of 607 is 304, divided by 5 is 60.8). Whether in relation to the actual recall vote or the vote to block the recall, [Arroyo] fell well short of that minimum, even if the no recall and abstention votes are added together instead of counted separately (as the 'or' in the clause would suggest should be done)." The court ruled Association did not violate Corporations Code sections 5222, subdivision (b) or 5513, subdivision (c): "An appropriate quorum was reached, and a vast majority of that quorum voted to recall [Arroyo]."

Finally, the court ruled that because Arroyo's negligence cause of action was founded on the alleged statutory violations, its findings meant Association and Figgers "cannot have acted negligently in proceeding with and conducting the recall election."

Arroyo filed this appeal.

DISCUSSION

I. *Standard of Review*

The parties disagree on the applicable standard of review. Arroyo contends the trial court's judgment was based entirely on statutory interpretation, and thus this court must review the judgment de novo. Association maintains the court resolved questions of fact, namely whether the candidate statement, considering its distribution and content, was "association media" as well as whether sufficient votes were cast for the recall. It argues because the questions required factual investigation, we must review its determinations for substantial evidence. Figgers more

11

generally argues that we review factual findings stemming from the bench trial for substantial evidence, and the court's interpretation of Association bylaws and California statutes de novo.

We independently review Arroyo's first claim—that the trial court erred in its interpretation of the term "association media" in section 5105, subdivision (a). "The interpretation of statutes presents questions of law we review independently." (*Fourth La Costa Condominium Owners Assn. v. Seith* (2008) 159 Cal.App.4th 563, 571; *Asaro v. Maniscalco* (2024) 103 Cal.App.5th 717, 738 [decision turning on the meaning of words used in a statute "presents 'a question of law that we review de novo' "].)

With respect to the validity of the recall election and the requisite number of votes, we see no dispute in the decisive underlying facts. In such a case, the issue raises only questions of law that we "address[ ] de novo, based on interpretation of the statutes and governing documents." (*Friars Village Homeowners Assn. v. Hansing* (2013) 220 Cal.App.4th 405, 411-412; see also *Lake Lindero Homeowners Association, Inc. v. Barone* (2023) 89 Cal.App.5th 834, 844 [plaintiff's "contentions challenge the trial court's application of the bylaws and statutes to essentially undisputed facts. The contentions are therefore subject to our de novo review"].)

II. *Interpreting "Association Media" in Section 5105*[7]

As a nonprofit mutual benefit corporation created to manage the common interests of the Pacific Ridge subdivision, Association is governed by the standards set forth in the Davis-Stirling Act. (*Villa De Las Palmas Homeowners Assn. v. Terifaj* (2004) 33 Cal.4th 73, 81; *Nahrstedt v. Lakeside Village Condominium Assn.* (1994) 8 Cal.4th 361, 377; *That v. Alders Maintenance Assn.* (2012) 206 Cal.App.4th 1419, 1425.) It therefore must comply with the Act's provisions and operate in accordance with its own governing documents. In the event of a conflict between Association's governing documents and the Act, the Act "shall prevail . . . ." (§ 4205, subd. (a).) Likewise, if there are conflicts between Association's operating rules and the bylaws, the bylaws prevail. (§ 4205, subd. (d).)

Section 5105 provides: "An association shall adopt operating rules . . . that do all of the following: [¶] . . . Ensure that if any candidate or member advocating a point of view is provided access to association media, newsletters, or internet websites during a campaign, for purposes that are reasonably related to that election, equal access shall be provided to all candidates and members advocating a point of view, including those not endorsed by the board, for purposes that are reasonably related to the election. The association shall not edit or redact any content from these

---

[7]    Association asks us to hold Arroyo forfeited this argument for insufficient or omitted citations to the record in violation of California Rules of Court, rule 8.204(a)(1)(C). For example, Association claims Arroyo's assertion about a September 8, 2023 notice of the recall election is unsupported by her record citation to page 611 of the appellant's appendix. The referenced document at page 611—the director recall document—in fact contains a footer reading "September 8, 2023." While we disregard assertions that are unsupported by citations to the record, we do not find Arroyo's arguments—which constitute questions of law, forfeited.

13

communications, but may include a statement specifying that the candidate or member, and not the association, is responsible for that content." (§ 5105, subd. (a)(1).)

Arroyo advances several arguments concerning the interpretation of the phrase "association media" in section 5105. Relying on the words' plain meaning, legislative intent and history as explained in *Wittenburg v. Beachwalk Homeowners Association* (2013) 217 Cal.App.4th 654 (*Wittenburg*), she argues association media means any method of communication under Association's control or support, by which it is possible for any candidate or member to advocate a point of view. She argues the meaning is broad enough to include the candidate statement, which was distributed to the membership with ballots and Association-paid postage. She contends the term—which was included in Senate Bill No. 61 so as to "provide substantial new voting protections" to homeowner association members—should be liberally construed to foster the Legislature's objectives. Arroyo further contends the court's ruling impermissibly relies on a board-created exclusion intended to evade section 5105's equal-access requirements.

Both Association and Figgers respond that Arroyo is barred from relitigating this contention given Judge Freestone's ruling in *Arroyo I*. Association raises the doctrine of res judicata or claim preclusion, claiming Arroyo is attempting to litigate the same cause of action. Figgers argues Arroyo is barred under collateral estoppel or issue preclusion, as she seeks to relitigate the identical issue. We begin with these contentions.

A. *Claim and Issue Preclusion*

"Claim and issue preclusion have different requirements. . . . [C]laim preclusion . . . appl[ies] 'only when "a second suit involves (1) the same cause of action (2) between the same parties [or their privies] (3) after a final

14

judgment on the merits in the first suit." ' [Citation.] Issue preclusion, by contrast, 'applies only "(1) after final adjudication (2) of an identical issue (3) actually litigated and necessarily decided in the first suit and (4) asserted against one who was a party in the first suit or one in privity with that party." ' " (*Grande v. Eisenhower Medical Center* (2022) 13 Cal.5th 313, 323, italics omitted.)

Arroyo's operative pleading in *Arroyo I* was labeled a class action complaint alleging two causes of action with multiple counts. In her first cause of action (entitled "Violation of Duty to Conduct Fair Elections") Arroyo alleged Association "use[d] its media and newsletters to promote incumbents and candidates that are preferred by the Board" and "used its resources to censor and redact the completed Request to Serve form before copying and distributing to the membership," which violated sections 5105 and 5135. She alleged Association modified the request to serve form "from election to election in order to elicit whatever responses would place the Board endorsed candidates in the best possible light" and "prohibited" other information that candidates sought to publish to promote themselves. Arroyo alleged the breaches of equal access resulted in "unjust and unfair elections" causing incumbents and board-endorsed candidates to win, while challengers were unable to win. In her second cause of action (entitled "Violation of Section 5105's Requirement to Create and Adopt Fair Election Rules," some italics omitted), Arroyo claimed a violation of section 5105's "equal access to association media" requirement, alleging in part that Association's "request to serve" form was an " 'official' communication from the Association" and "precisely the type of communication from the association that the law requires to be subject to the equal[-]access provisions of section 5105" as well as the "single most important communication during the election." She

15

alleged Association's attempt to redefine association media in its election rules violated section 4205, requiring the law to prevail over Association governing documents.

Judge Freestone's statement of decision characterizes Arroyo's first cause of action as whether the request to serve form violated sections 5105 and 5135, and her second cause of action as pertaining to "whether [Association's] Election Rule (B)(1) violates . . . section 5105[, subdivision (a)(1)] . . . ." As summarized above, the court ruled there were no conflicts or violations.

Arroyo's operative pleading in the present case is her February 2024 petition and complaint. That pleading pertains to the validity of the recall election. Arroyo's first cause of action alleges Figgers's refusal to distribute Arroyo's statement to the membership in connection with the recall ballot violated the equal-access provisions of section 5105, subdivision (a) because although she was not a "candidate," she was a member entitled to section 5105's protection. Arroyo alleges that "[h]aving her statement printed and delivered to all the members was obviously critical to her campaign to retain her seat on the Board. For most members, the material sent with the ballots, such as the candidate statements, are the only campaign materials that the voting members see. Also, because it is sent at Association's expense and with the official ballots it has an imprimatur of 'officialness' that other forms of campaigning don't have." She alleged that because her "statement was not printed and distributed with the rest of the ballot materials as the statement from the candidate, she was denied the same 'equal access' to express her point of view the same as any candidate, or any other member."

16

1. *The Issues are Not Identical*

Our conclusion as to issue preclusion is straightforward. For purposes of that doctrine, " ' " [t]he "identical issue" requirement addresses whether "identical factual allegations" are at stake in the two proceedings, not whether the ultimate issues or dispositions are the same.' " ' " (*Rodriguez v. Lawrence Equipment, Inc.* (2024) 106 Cal.App.5th 645, 659; see also *Lucido v. Superior Court* (1990) 51 Cal.3d 335, 342.) That is not the case here, where Arroyo's current petition and complaint's allegations are specific to the recall election and candidate statement appended to the recall ballot, whereas her prior class action complaint pertained to Association's use and characterization of its request to serve form. Figgers does not acknowledge or address the relevant standard or compare the factual allegations of the respective pleadings. She asserts only that the question of whether the request to serve form and the candidate form violate section 5105 are the same issue because the two forms "both fill a singular purpose—to initiate a member's candidacy for election and tether the candidates' general information to the ballot." The argument does not convince us that issue preclusion applies.

2. *The Class Action Causes of Action of* Arroyo I *Differ From the Present Causes of Action*

We readily dispose of Association's claim preclusion arguments as well. " 'Two proceedings are on the same cause of action if they are based on the same "primary right." [Citation.] The plaintiff's primary right is the right to be free from a particular injury, regardless of the legal theory on which liability for the injury is based. [Citation.] The scope of the primary right therefore depends on how the injury is defined. A cause of action comprises the plaintiff's primary right, the defendant's corresponding primary duty, and

17

the defendant's wrongful act in breach of that duty. [Citation.] [¶] An injury is defined in part by reference to the set of facts, or transaction, from which the injury arose.'" (*Silverado Modjeska Recreation & Parks District v. County of Orange* (2011) 197 Cal.App.4th 282, 297-298; see *Boeken v. Philip Morris USA, Inc.* (2010) 48 Cal.4th 788, 798 ["the cause of action is the right to obtain redress for a harm suffered, regardless of the specific remedy sought or the legal theory (common law or statutory) advanced"].) The harm suffered is the "significant factor" in determining whether the same cause of action is involved in two suits. (*Cal Sierra Development, Inc. v. George Reed, Inc.* (2017) 14 Cal.App.5th 663, 675-676.)

Association does not discuss the primary right theory or apply it to Arroyo's pleadings. It argues only that Arroyo "brings [the present] action under the same section of the Civil Code, under the equal[-]access provision, regarding its application to the same materials which are prepared by candidates—and are circulated in the same way—with ballot materials. Appellants [*sic*] contentions that ballot materials containing candidate statements are association media have not changed from *Arroyo I*." According to Association, as a result, "[t]here can be no question that the instant action is an identical cause of action which [Arroyo] has already brought."

The argument without analysis of primary rights does not persuade us to apply claim preclusion. In any event, we view Arroyo's claims as involving two distinct injuries or primary rights based on differing sets of facts: In *Arroyo I,* the alleged injury in Arroyo's first cause of action was to a putative class of homeowners that would be governed by unethical or incompetent board members; a board "with the ability to squander the Association's resources and . . . corrupt its elections" stemming from Association's conduct

18

of assertedly unfair board elections and failure to adopt fair election rules. As Arroyo alleged it, Association manipulated the position of names on the ballot so as to elect board members unresponsive to the desires of homeowners; used its media to promote incumbents and preferred candidates and censored candidate responses; and breached equal-access rules by (1) allowing the board president, but not anyone else, to include a photograph as part of his candidate statement as well as (2) redefining "association media" to exclude the request to serve form in order to "promote Board endorsed candidates."

The alleged injury in the present case, in contrast, is to Arroyo alone, and her inability to defend herself in the recall election and subsequent loss of her board position. The injury stemmed not from Association's handling of the request to serve form in board elections, but its refusal to include her candidate statement with the ballot materials in the recall election. Claim preclusion does not apply to these differing sets of facts and transactions.

B. *The Plain Meaning of Association Media Encompasses the Candidate Statements Accompanying Ballot Materials*

We turn to the merits of Arroyo's claim concerning the interpretation of the phrase "association media" in section 5105. Its resolution is a matter of statutory construction that we conduct independently. " ' " ' "When we interpret a statute, '[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning . . . . If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend.' " ' " ' [Citation.] However, ' " ' " '[i]f the statutory language permits more than one reasonable interpretation, courts may consider

19

other aids, such as the statute's purpose, legislative history, and public policy.' " ' " ' " (*Gutierrez v. Tostado* (2025) 18 Cal.5th 222, 231.) " 'We do not examine [statutory] language in isolation, but in the context of the statutory framework as a whole in order to determine its scope and purpose and to harmonize the various parts of the enactment.' " (*Asaro v. Maniscalco, supra,* 103 Cal.App.5th at p. 738.)

"The equal-access provision of [former section 1363.03, now section 5105] subdivision (a)(1) is triggered any time a 'member' advocates a point of view using association media." (*Wittenburg, supra*, 217 Cal.App.4th at p. 664.) There are several dictionary definitions of the word medium and its plural, media: Merriam-Webster.com defines medium as "a means of effecting or conveying something" and "media" as "a channel or system of communication, information, or entertainment." (http://www.merriam-webster.com/dictionary/medium.) The Oxford English Dictionary defines "media," in part, as "[t]he main means of mass communication, esp. newspapers, radio, and television, and . . . content accessed via the internet, regarded collectively." (www.oed.com.) OxfordDictionaries.com defines it as "[a] means by which something is communicated or expressed." (http://www.oxforddictionaries.com/us/definition/american english/medium; see also Dictionary.com (http://dictionary.reference.com/browse/media [defining "media" as "the means of communication, as radio and television, newspapers, and magazines, that reach or influence people widely"]).)

Here, the plain meaning of the word "media" is dispositive. It encompasses Association's notice of the recall election and the attached candidate statement. The notice—put out by Association as evidenced by its heading—communicated the recall election's date and time as well as voting instructions to the membership and circulated the single member's statement

20

(also underneath Association's heading) explaining his intentions if elected as the replacement board member. There can be no other purpose of the candidate statement than to convince members to vote for him. "Black's Law Dictionary defines 'advocacy' as '[t]he act of pleading for or actively supporting a cause or proposal.' (Black's Law Dict. (7th ed. 1999) p. 55, col. 2.) And the verb 'advocate' is commonly defined to mean 'to plead in favor of.' (Merriam-Webster's Collegiate Dict. (10th ed. 2001) p. 18, col. 1.)" (*Wittenburg*, *supra*, 217 Cal.App.4th at p. 666.) Because the materials permitted a member to "advocate[ ] a point of view" within Association's notice "during a campaign, for purposes that are reasonably related to that election" (§ 5105, subd. (a)(1)), Association was obligated to provide equal access to Arroyo, a member, to advocate her point of view "for purposes that are reasonably related to the election." (*Ibid*.)

Wittenburg emphasized that section 5105 reflects the "Legislature's particular concern that viewpoints opposing the [homeowner association] board be heard." (*Wittenburg*, *supra*, 217 Cal.App.4th at p. 666.) The appellate court in *Wittenburg* reviewed a trial court's interpretation of the statute that would have excluded from the equal-access rule a homeowner association's use of its own media to endorse a candidate or viewpoint. (*Ibid*.) It held board members are treated as any other member, agreeing with the proposition that the trial court's rule "would allow those in power the advantage of using Association media to advocate a point of view to the exclusion of any opposing view," a construction that was "fundamentally

21

unfair" and "would facilitate rather than cure the evils intended to be remedied by the statute." (*Id.* at p. 665.)[8]

In this case, when Association invited members to run for replacement board position in the recall election and included with its notice and ballot materials a candidate testimonial advocating that members vote for him upon a successful recall, it was obligated to give other members equal access to advocate their point of view, so long as it was for "purposes that are reasonably related to the [recall] election." (§ 5105, subd. (a)(1).) As in *Wittenburg*, our application of the plain meaning of media—a means or channel of communication or information—"is consistent with the overall nature and purposes of [section 5105.] Subdivision (a)(1) was part of a bill that sought to 'provide substantial new voting protections' to members of homeowners associations designed to 'guarantee that basic democratic principles are in place during elections,' which had previously been 'contaminated by manipulation, oppression and intimidation of members, as well as outright fraud.' (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 61 (2005-2006 Reg. Sess.) as amended Apr. 12, 2005, pp. 1-2.)" (*Wittenburg*, *supra*, 217 Cal.App.4th at p. 666.) *Wittenburg* held the statute is "thus

---

8      *Wittenburg* does not address or turn on the definition of "association media." It held that board members were undisputedly association members for purposes of section 5105, subdivision (a)(1)'s equal-access provision. (*Wittenburg*, *supra*, 217 Cal.App.4th at p. 665.) There, the board exhorted members to vote to amend the association's CC&R's in a cover letter with a ballot, made arguments in a newsletter without inviting nonboard members to provide opposing viewpoints in the newsletter (*id.* at pp. 658-661), and denied homeowners use of a community bulletin board, common area space, and website. (*Id.* at pp. 661-662.) The *Wittenburg* court explained the rule was triggered by "advocacy" not "campaigning," and held the board's communications were advocacy, as they encouraged members to vote yes on the amendment. (*Id.* at pp. 666-667.)

22

remedial in nature," explaining that " '[a] statute which "is remedial in nature and in the public interest is to be liberally construed to the end of fostering its objectives . . . . 'The rule of law in the construction of remedial statutes requires great liberality, and wherever the meaning is doubtful, it must be so construed as to extend the remedy.' " ' " (*Ibid.*) Our decision construes the statute accordingly.

Association's election rule B.1. limiting the definition of association media does not change our conclusion. That rule only excludes from the ambit of association media the request to serve form "for Board election." It does not address the recall notice or candidate statement form here, used for Arroyo's recall election. In any event, rule B.1. includes within its definition of association media "other written communication . . . from [Association]." The term is broad enough to encompass communications written by another member in a document circulated to the membership by Association, as was the candidate statement here.

Association and Figgers's arguments to the contrary are unavailing. Association argues substantial evidence supports the trial court's finding that the candidate statement is not association media. It points to the fact the candidate statement is a "two sentence statement prepared by [the candidate] which was included in the ballot materials circulated in the recall election" and was "not circulated in the Association newsletter, posted on any website maintained by the Association, or prepared on behalf of the Association." Figgers maintains that Association media refers to "channels of communication *the Board uses* to 'advocat[e] a point of view' " and not " 'purely informational' " matters (Italics added.) She argues the candidate statement "form does not 'advocat[e] a point of view' *of the* [*Association*]" (italics added) or even advocate a point of view generally, but rather is solely

23

informational. According to Figgers, if the phrase is defined broadly, then the addition of "newsletters" and "internet websites" would be rendered meaningless surplusage.

Association's arguments are misplaced. Because the relevant facts are undisputed as to the candidate statement's content and manner of distribution, the question is one that we decide independently. And the language of section 5105 shows it is triggered where "any candidate or member [is] advocating a point of view"; it need not be a point of view *held by the Association*. We disagree that the member's candidate statement was solely informational, it was plainly intended to convince members to vote for him to replace Arroyo. Finally, Figgers's surplusage point is in substance an argument that the trial court got the statute's interpretation right; she does not otherwise analyze what more narrow definition of media the Legislature must have intended by listing media along with "newsletters and internet websites." Nor does she provide legislative history that would explain why the term media should be given a narrow or more specific construction. In sum, we conclude that under section 5105, Arroyo should have been given equal access to the recall ballot materials—including the candidate statement—for purposes reasonably related to the recall election, which would include stating her position against the recall efforts. We leave it to the trial court to decide what other purposes might be reasonably related to that election.

Because Association failed to comply with section 5105, subdivision (a)(1) to provide Arroyo equal access to association media, we reverse the judgment. However, on remand the court must exercise some discretion about voiding the election: "[A] violation of [section 5105] subdivision (a)(1) does not automatically void the election results." (*Wittenburg*, *supra*, 217

24

Cal.App.5th at p. 667.)  *Wittenburg* referenced former section 1363.09,[9] which is now section 5145.  (Cal. Law Revision Com. com., 12B Pt. 2 West's Ann. Civ. Code (2016 ed.) foll. § 5145, p. 93; *Artus v. Gramercy Towers Condominium Assn.* (2018) 19 Cal.App.5th 923, 944 ["section 5145 merely 'continue[d]' [former section 1363.09's] remedial provisions"].)  Section 5145, subdivision (a) provides:  "If a member establishes . . . that the election procedures of this article . . . were not followed, a court shall void any results of the election *unless the association establishes, by a preponderance of the evidence, that the association's noncompliance with this article or the election operating rules did not affect the results of the election.  The findings of the court shall be stated in writing as part of the record.*"  (Italics added.)  The trial court on remand must consider Association's showing and make this determination in the first instance.

III.  *Negligence and Validity of the Recall Election*

Our reversal of the judgment renders moot Arroyo's claims concerning negligence and the recall election's validity based on the number of votes cast.  (See *Lake Lindero Homeowners Association v. Barone*, *supra*, 89 Cal.App.5th at p. 840 [it is the duty of every judicial tribunal "not to give opinions upon moot questions"].)  For the parties' and trial court's guidance, however, we briefly address Arroyo's contention that the recall election failed because Association did not obtain the supermajority vote of 505 members it assertedly needed under the Corporations Code to pass the recall.  Again, the parties incorrectly rely on Corporations Code section 5222, subdivision (b)(1);

---

9      Former section 1363.09 provided that on a finding of a violation of the article's election procedures, "a court *may* void any results of the election." (Former § 1363.09, subd. (a), italics added; see also *Wittenburg, supra,* 217 Cal.App.5th at p. 667.)

because Association is a nonprofit mutual benefit corporation, the relevant section is Corporations Code section 7222. The statutes are identical.

Corporations Code section 7222 provides in part: "Subject to subdivisions (b) and (f), any or all directors may be removed without cause if: [¶] . . . In a corporation with 50 or more members, the removal is approved by the members (Section 5034)." (Corp. Code, § 7222, subd. (a).) Subdivision (b) of section 7222 provides in part: "In a corporation in which the articles or bylaws authorize members to cumulate their votes pursuant to subdivision (a) of Section 7615, no director may be removed (unless the entire board is removed) when the votes cast against removal, or not consenting in writing to the removal, would be sufficient to elect the director if voted cumulatively at an election at which the same total number of votes were cast (or, if the action is taken by written ballot, all memberships entitled to vote were voted) and the entire number of directors authorized at the time of the director's

26

most recent election were then being elected." (Corp. Code, § 7222, subd. (b)(1).)[10]

Here, the trial court ruled subdivision (b)(1) of this statute did not apply, but rather the recall election was governed by Corporations Code section 5034. We agree. Association's bylaws state: "Cumulative-voting is required for all elections *in which more than two (2) directors are to be elected*, subject to the procedural prerequisites prescribed in Section 7615[, subdivision] (b) of the California Corporations Code. (Italics added.) Under this provision, cumulative voting is *not* authorized for an election of only one director, which was the case here, where the election was to recall Arroyo and replace her with one new director.

Under these circumstances, the court properly invoked subdivision (a)(2) of Corporations Code section 7222. The "plain terms" of Corporations

_____

[10] A leading treatise on common interest developments refers to the application of Corporations Code section 7222, subdivision (b)(1) as "somewhat complex" and the statute as a "rather badly worded code provision" that "has defied many attempts at interpretation." (2 Hanna & Van Atta, Cal. Common Interest Developments: Law and Practice (2025 ed.) Removal, § 18.71.) In particular, the authors say the meaning of the statutory language on which Arroyo relies—"votes cast against removal, or not consenting in writing to the removal"—"could be debated, which is a reason that the statute should be amended." (*Id*.) Association's bylaws as to removal of directors essentially restate Corporations Code section 7222, subdivision (b)(1), but eliminate the parenthetical "(or, if the action is taken by written ballot, all memberships entitled to vote were voted)." It provides: "Unless the entire Board is removed from office by the vote of the Members, an individual director shall not be removed prior to the expiration of his or her term of office if the number of votes cast against his or her removal or not consenting in writing to his or her removal would be sufficient to elect him or her if voted cumulatively at an election at which the same total number of votes were cast and the entire number of directors authorized at the time of the most recent election of the governing Board member were then being elected."

27

Code section 7222, subdivision (a)(2), "for a corporation with 50 or more members . . . dictate that the removal need only be 'approved by the members' as that phrase is defined in section 5034." (*Lake Lindero Homeowners Association v. Barone, supra,* 89 Cal.App.5th at p. 845.) The *Lake Lindero* court explained: "[Corporations Code s]ection 5034 provides: ' "Approval by (or approval of) the members" means approved or ratified by the affirmative vote of *a majority of the votes represented and voting at a duly held meeting at which a quorum is present* (which affirmative votes also constitute a majority of the required quorum) or written ballot . . . or by the affirmative vote or written ballot of such *greater proportion*, including all of the votes of the memberships of any class, unit, or grouping of members *as may be provided in the bylaws* (subdivision (e) of [Corporations Code s]ection 5151, *subdivision (e) of [Corporations Code s]ection 7151*, or subdivision (e) of [Corporations Code s]ection 9151) or in Part 2, Part 3, Part 4 or Part 5 for all or any specified member action.' (Italics added.) The statute's reference to subdivision (e) of [Corporations Code] section 7151 is critical because, while [Corporations Code] section 5034 permits a nonprofit mutual benefit corporation to require a greater proportion of votes in its bylaws, [Corporations Code] section 7151, subdivision (e) expressly withdraws this authorization for a vote to remove a director from the corporation's board. [¶] [Corporations Code s]ection 7151, subdivision (e) provides: "The bylaws may require, for any or all corporate actions (*except as provided in paragraphs (1) and (2) of subdivision (a) of [Corporations Code s]ection 7222 . . .*) the vote of a larger proportion of, or all of, the members or the members of any class, unit, or grouping of members or the vote of a larger proportion of, or all of, the directors, than is otherwise required by this part.' " (*Lake Lindero*, at pp. 845-846.)

*Lake Lindero* involved association bylaws (art. VI, § 3) that provided an individual director could be removed from office "with or without cause at any time by a *vote of the majority of the votes held by the entire membership of record* at any regular or special meeting of members." (*Lake Lindero Homeowners Association v. Barone, supra*, 89 Cal.App.5th at p. 845.) The court held the association could not enforce that bylaw provision: "Because [Corporations Code] section 7151, subdivision (e) expressly prohibits a nonprofit mutual benefit corporation with 50 or more members (like the Association) from requiring a greater proportion of votes than is specified in [Corporations Code] section 7222, subdivision (a)(2) for the removal of a director, the trial court correctly concluded article VI, section 3 of the Association's bylaws could not be enforced to invalidate the recall election. And, because [Corporations Code] section 7222, subdivision (a)(2) requires only 'approv[al] by the members' as defined in [Corporations Code] section 5034 to remove a director ([Corp. Code,] § 7222, subd. (a)(2)), the trial court correctly concluded the recall was valid if approved 'by the affirmative vote of

a majority of the votes represented and voting at a duly held meeting at which a quorum is present.' ([Corp. Code,] § 5034.)" (*Id.* at p. 846.)[11]

---

[11]     Arroyo's claim as to subdivision (b)(1) of Corporations Code section 7222 turns on interpretation of its phrase "votes cast against removal, or not consenting in writing to the removal . . . ." She argues "or not consenting in writing to the removal" means members who do not vote at all, not just members who participated in the vote but abstained, as the trial court reasoned. The trial court interpreted the statute to mean that the phrase "or not consenting in writing to the removal" refers to the preceding votes cast, such that it refers either to votes (1) against removal or (2) votes "not consenting in writing to the removal" such as abstentions. We need not reach the question. But we observe that the treatise referenced above provides the following formula: "A formula based on [Corporations Code section 7222, subdivision (b)(1)], for determining the number of votes needed to elect a certain number of directors when voting cumulatively is stated as follows:  X = [(MxD)/(N+1)]+1.  [¶]  X = Number of votes needed to elect a director; M = Number of members entitled to vote; D = Number of Directors to be elected or removed; N = Total number of Directors." (2 Hanna & Van Atta, *supra,* § 18.71, comment, quoting Ballantine and Sterling, California Corporation Laws (4th ed. 1996) § 176.03[3].)  This treatise further states that "[i]n calculating the number of votes for retention (or against removal) the votes should include those voting against removal (or for retention), *and in addition, those not voting at all.*" (Hanna & Van Atta, § 18.71, italics added.)  As we have already indicated, the authors, however, go on to say that the "meaning of that clause ['votes cast against removal, or not consenting in writing to the removal'] could be debated . . . ." (*Ibid.*)  The Legislature should provide clarity on this issue, particularly given the proliferation of common interest development communities governed by directors.

## DISPOSITION

The judgment is reversed. On remand, the trial court is directed to conduct further proceedings so as to give Association the opportunity to establish, by a preponderance of the evidence, that its noncompliance with section 5105 did not affect the results of the election, and state its findings in writing as part of the record. Arroyo shall recover her costs on appeal.


O'ROURKE, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

31

Filed 12/1/25

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| RACHEL ARROYO,<br>        Plaintiff and Appellant,<br><br>        v.<br><br>PACIFIC RIDGE NEIGHBORHOOD<br>HOMEOWNERS ASSOCIATION et al.,<br>        Defendants and Respondents. | D084293<br><br><br>(Super. Ct. No.<br> 37-2023-00050446-CU-WM-CTL)<br><br>ORDER CERTIFYING<br>OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed November 4, 2025, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to Be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein be published in the Official Reports.

O'ROURKE, Acting P. J.

Copies to:  All parties